CRESTAR BANK, ET AL.

V.

WILLIAM L. MARTIN, ET AL.

Record No. 881074

September 22, 1989

Present: All the Justices

*Michael K. Smeltzer (Frank K. Friedman; Deborah A. Oehlschlaeger; Mary Ann Hinshelwood; Woods, Rogers & Hazlegrove*, on briefs), for appellants.

*Carl R. Schwertz (Gilmer, Sadler, Ingram, Sutherland & Hutton*, on brief), for appellees William L. Martin, Juanita C. Martin, April Martin, Carolyn Rae Martin and Cynthia Martin (now McDaniel).

*Roy B. Thorpe, Jr., County Attorney*, for appellee Board of Supervisors of Montgomery County.

No brief or argument for appellee Town of Christiansburg.

Chief Justice Carrico delivered the opinion of the Court.

The question for decision in this case involving mobile homes is whether a family subdivision which is exempt from compliance with a subdivision ordinance is nevertheless subject to the land-use controls of a zoning ordinance.

At the time of the proceeding below, Section 16-2 of the Montgomery County subdivision ordinance[1] defined a subdivision as "the division of a parcel of land into three (3) or more lots or parcels, any of which is less than five (5) acres each, . . . for the

---

[1] The Montgomery County subdivision ordinance has since been revised and is now found in Chapter 8, Subdivisions, of the Code of Ordinances of Montgomery County, Virginia (1988).

purpose of transfer of ownership or building development." Section 16-16 (a) provided that no person shall subdivide any tract of land "except in conformity with the provisions of this [subdivision ordinance] and all other applicable standards." Section 16-16 (b) provided, however, that "[a] single division of a lot or parcel [made] for the purpose of sale or gift to a member of the immediate family of the property owner" would not be subject to the requirements of the ordinance.

On July 31, 1986, relying upon the family-member provision of the subdivision ordinance, William L. Martin and Juanita Martin, owners of a five-and-one-half acre tract, made three half-acre off-conveyances to their three daughters. The county zoning administrator later issued building permits allowing each daughter to erect a mobile home on her respective lot, and two of the daughters erected mobile homes pursuant to the permits.

At the time of the proceeding below, § 18-32 (23) of the county zoning ordinance[2] provided that "individual mobile homes are not permitted on private lots in subdivisions." On October 20, 1987, citing this provision, the complainants, Crestar Bank and Betty Stuart G. Halberstadt, co-trustees under a trust agreement for Betty Stuart G. Halberstadt, filed a bill of complaint and later an amended bill against the Board of Supervisors of Montgomery County and Mr. and Mrs. Martin and their three daughters. The complainants alleged that the trustees were the owners in trust and Betty Stuart G. Halberstadt was the beneficial owner of a 187-acre tract of land adjoining the Martin 5 ½ acre parcel.

The complainants alleged further that the division of the Martin parcel into four lots constituted a subdivision within the meaning of the subdivision ordinance and that the erection of mobile homes on the lots violated § 18-32 (23) of the zoning ordinance. The complainants prayed that the court declare void the three deeds executed by Mr. and Mrs. Martin and order county officials to remove the mobile homes erected by the Martin daughters.

By letter opinion dated May 6, 1988, the trial court held that because the "conveyances [were] to family members, they would be exempt from the Subdivision Ordinance" and, therefore, that "the building permits issued by the Montgomery County officials were not in violation of the County's Zoning Ordinance." From

---

[2] The Montgomery County zoning ordinance has since been revised and is now found in Chapter 10, Zoning, of the Code of Ordinances of Montgomery County, Virginia (1988).

the court's final decree entered June 30, 1988, we granted the complainants this appeal.

We believe the trial court erred in holding that, because the conveyances to family members were "exempt from the Subdivision Ordinance," the building permits issued by the county were not in violation of the zoning ordinance. A similar situation was presented recently in *Leake* v. *Casati*, 234 Va. 646, 363 S.E.2d 924 (1988).

■ There, we considered the question whether a court, in deciding whether land may be conveniently partitioned in kind, is controlled by the provisions of a local ordinance regulating the subdivision of land. Albemarle County, one of the appellees, argued that if a local subdivision ordinance is held inapplicable to a court-ordered partition of land, then " 'logically, so must be the zoning, soil erosion control and other development-oriented regulatory ordinances.' " *Id.* at 651, 363 S.E.2d at 927. Such a result, argued the county, "would be chaotic," and would lead to collusive suits to circumvent such ordinances." *Id.* We disagreed, saying:

> The county states a *non-sequitur.* Even though the court's power to order a division of land is unaffected by a subdivision ordinance, it does not follow that those who become owners of the resulting parcels will be immune to valid laws regulating land *use.*

*Id.* (emphasis in original).

■ Here, it does not follow that, because Mr. and Mrs. Martin were permitted to divide their land without complying with the subdivision ordinance, the erection of mobile homes on the resulting parcels would not violate the zoning ordinance. Such erection would be valid only if the resulting parcels did not constitute "private lots in subdivisions," because, as noted previously, under § 18-32 (23) of the zoning ordinance, "individual mobile homes are not permitted on private lots in subdivisions."

There can be no dispute that the resulting parcels were "private lots." The crucial question, therefore, is whether the division which produced these lots constituted a subdivision within the meaning of § 18-32 (23). This section did not define the term "subdivision," nor was the term defined elsewhere in the zoning ordinance. Accordingly, we turn to § 16-2 of the subdivision ordinance for the definition of the term "subdivision" as meaning "the

division of a parcel of land into three (3) or more lots or parcels, any of which is less than five (5) acres each, . . . for the purpose of transfer of ownership or building development."

■ The Martin conveyances resulted in the division of the original five-and-one-half acre tract into one parcel containing four acres and three parcels containing one-half acre each, or all less than five acres each, and the division was "for the purpose of transfer of ownership." Hence, although Mr. and Mrs. Martin may have been excused from complying with the requirements of the subdivision ordinance, the division they made of their land is nonetheless a subdivision within the contemplation of § 18-32 (23) of the zoning ordinance.

■ It follows that the use of the land for the erection of mobile homes is in violation of the zoning ordinance and that the building permits issued by the zoning administrator are void. *Hurt* v. *Caldwell*, 222 Va. 91, 97-98, 279 S.E.2d 138, 142 (1981); *Blacksburg* v. *Price*, 221 Va. 168, 171, 266 S.E.2d 899, 901 (1980); *Segaloff* v. *City of Newport News*, 209 Va. 259, 261-62, 163 S.E.2d 135, 137 (1968). The county and the Martins argue, however, citing *Hladys* v. *Commonwealth*, 235 Va. 145, 148-49, 366 S.E.2d 98, 100 (1988), that there is a presumption of correctness in a zoning administrator's interpretation of a zoning ordinance and that we should not disturb the zoning administrator's issuance of the building permits in this case in the absence of a showing of bias or improper conduct. The presumption does not apply, however, where, as here, the zoning administrator's action is to approve a use forbidden by the zoning ordinance.

For the reasons assigned, we will reverse the judgment of the trial court and remand the matter with instructions to abate the zoning violations involved in this case.

*Reversed and remanded.*